IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DURRELLE YARBOUGH** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 24-CV-6356 |
| | : | |
| **STATE OF PENNSYLVANIA, et al.,** | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                            SEPTEMBER 24, 2025

Currently, before the Court is the Second Amended SAC ("SAC") filed by *pro se* Plaintiff Durrelle Yarbough. (ECF No. 19.) The Court granted Yarbough leave to proceed *in forma pauperis* in a prior order. (ECF No. 16.) For the reasons set forth, the SAC is dismissed on statutory screening pursuant to 28 U.S.C. § 1915.

**I.     FACTUAL ALLEGATIONS**[1]

Yarbough names sixty-one (61) individual and institutional defendants, including: the Commonwealth of Pennsylvania; the Pennsylvania Attorney General; the Montgomery County Adult Probation and Parole Department and numerous individual employees; the Pottstown and Norristown Police Departments and numerous officers; the Montgomery County Correctional Facility ("MCCF"), its employees, its Board of Commissioners, and individual Commissioners; the Montgomery County Courthouse Prothonotary's Office, individual Court Administrators, and

---

[1] The facts set forth in this Memorandum are derived from the SAC (ECF No. 19). The Court adopts the pagination assigned to the SAC by the CM/ECF docketing system. The Court also take judicial notice of and includes facts reflected in publicly available state court records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Judges[2] of the Montgomery County Court of Common Pleas; the Montgomery County District Attorney and Public Defender's Offices and numerous individual attorneys; the Montgomery County Sherriff's Department and Sherriff; and the Norristown State Hospital. (SAC at 3-5.)

In the SAC, Yarbough indicates that he was released from a period of incarceration in a state correctional institution in March 2023,[3] and that prior to his release, he "was handed documents to sign, one being the supervision of parole & probation. To reserve [his] rights . . . and refuse further business in the future, [Yarbough] signed each document, 'Accepted for value, exempted from levy, without recourse. UCC 1-201, UCC 1-308.'" (*Id.* at 6.) He provided an incorrect address "for privacy purposes." (*Id.*) He asserts that after his release, he reported to Montgomery County Adult Probation and Parole, was given more documents to sign, and signed them in the same manner. (*Id.*) Because the address did not check out, he was required to return to that office to verify his address and phone number, and he "inform[ed]" his parole agent "that Parole & Probation does not have proxy over [him], and [he] never consented to do business" with them, and that "any/all business being conducted between/with [Yarbough] and/or his person, conducted by Parole & Probation is, and will be, under duress." (*Id.* at 6-7.) He once again signed documents in the same manner, told agents that he was "reserving [his] rights," and then "was allowed to exit." (*Id.* at 7.) Yarbough states that he was summoned by parole agents a few weeks later to provide a urine sample; he refused and was "released without incident." (*Id.* at 8.)

---

[2]   Among the Judges named as Defendants in the SAC is Judge Gail A. Weilheimer. At the time of the incidents alleged in the SAC, and at the time Yarbough initiated this action, Judge Weilheimer was serving on the Court of Common Pleas for Montgomery County. Since that time, Judge Weilheimer has been appointed to this Court.

[3]   Public records indicate that Yarbough was sentenced to one to five years' incarceration after pleading guilty to one count of burglary in 2019. *See Commonwealth v. Yarbough*, No. CP-46-CR-0002416-2018 (C.P. Montgomery).

Yarbough alleges that "in a span of three to four months," he did not receive any calls from parole agents, but "noticed [an] increase of police vehicles . . . in/on almost every area [that he] frequented in Norristown and Pottstown." (*Id.*) On September 15, 2023, he was at the Norristown Transportation Center when he was approached by armed police, "tackled from behind," searched, and arrested. (*Id.* at 8-9.) He alleges that thereafter he was "illegally detained" by the Norristown Police Department and "illegally interrogated by each officer without . . . *Miranda* right[s]." (*Id.* at 10.) Yarbough states that he refused to sign various documents, and that fingerprints and photographs were "forcibly taken" by police. (*Id.*)

Yarbough details numerous court appearances and hearings that took place between September 2023 and March 2024. (*See generally id.* at 11-14.) He indicates that on March 6, 2024, his criminal case was "transferred to the competency track for a competency evaluation to determine whether [Yarbough was] competent to stand trial." (*Id.* at 14 (citing *Commonwealth v. Yarbough*, No. CP-46-CR-0005601-2023).) He alleges that his case "stalled" on the competency track when he first refused the competency evaluation and then eventually, "under duress," he decided to have it. (*Id.* at 15.) Yarbough was transferred from MCCF to Norristown State Hospital on November 3, 2024, and remained there until December 23, 2024, "under duress and without [his] consent," until he was sent back to MCCF. (*Id.*)

Yarbrough then makes various allegations about the conduct of his pretrial and trial proceedings. He alleges that two hearings were conducted to determine if he was competent to waive his right to counsel and represent himself; that he remained silent at both; that his "oral motion to represent himself" was denied, though he claims never to have made such a motion; and that a public defender "was illegally appointed" to represent his "person" without his consent. (*Id.* at 16.) He asserts that he refused to attend a scheduling hearing in April 2025 because the courts

3

were "doing illegal business . . . without [his] consent and under duress." (*Id.*)  He asserts that he did not attend his two-day trial in July 2025. (*See id.* at 18.)  He states that his sentencing is scheduled for September 24, 2025.  (*Id.*)

Publicly available state-court dockets reflect that Yarbough was arrested by the Norristown Police Department on September 15, 2023.  *See Commonwealth v. Yarbough*, No. MJ-38115-CR-0000131-2023 (Mag. Dist. Ct.).  He was charged with thirteen counts related to robbery, possession of firearms, and terroristic threats; one of those charges was dismissed before the case was transferred to the Court of Common Pleas.  *See Yarbough*, No. CP-46-CR-0005601-2023.  Yarbough's case was placed on the court's competency track from March 6 to December 18, 2024, and Yarbough was transferred temporarily from MCCF to Norristown State Hospital for a competency evaluation.[4]  *See id.*  On March 3, 2025, after a *Grazier* hearing,[5] the state court denied Yarbough's motion to proceed *pro se*.  *See id.*  The state-court docket reflects numerous transportation orders apparently relating to court hearing dates and Yarbough's competency evaluation.  *See id.*

On July 7, 2025, the state court granted the prosecution's motion for *nolle prosequi* as to eight of the remaining twelve charges against Yarbough.  *See id.*  On July 9, 2025, Yarbough was found guilty of two counts of robbery, in violation of 18 Pa. Cons. Stat. § 3701(a)(1)(ii) and (iv), and one count of carrying a firearm without a license, in violation of 18 Pa. Con. Stat. § 6106 (a)(1), but found not guilty of one count of possession of a firearm by a felon.  *See id.*  The state court has scheduled sentencing and ordered a pre-sentence investigation, but Yarbough has yet to be sentenced.  *See id.*

---

[4]    This Court also made note of that transfer in a prior Order.  (*See* ECF No. 7 at 1 n.2.)

[5]    *See Com. v. Grazier*, 713 A.2d 81 (1998).

4

In the SAC, Yarbough asserts claims under numerous provisions of federal and state constitutional and statutory law. (*See generally id.* at 19-33.) He seeks over $200 million in damages for the various alleged violations of his rights. (*Id.* at 38.) He also appears to seek injunctive relief directing officials at MCCF to provide him with a job, as well as an order releasing him from custody and enjoining any further criminal proceedings. (*Id.* at 40, 41.)

## II.   STANDARD OF REVIEW

The Court granted Yarbough leave to proceed *in forma pauperis* in a prior order. (ECF No. 16.) Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Yarbough's SAC if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a SAC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Yarbough is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint

5

has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

### III. DISCUSSION

Yarbough's SAC contains detailed factual assertions. However, the entire SAC is based on a fundamental flaw: all Yarbough's claims, bar none, rest on the assertion that each Defendant "conduct[ed] illegal business with 'Durrelle Yarbough,' without the consent, contractual binding (express/implied), signature, agreement, cooperation and/or surety of Petitioner," that is, Yarbough himself. (SAC at 19; *see also id.* at 20-34 (repeating this same allegation for every enumerated claim in the SAC).) This flaw is underscored by many specific factual allegations in the SAC, such as that Yarbough signed various documents: "Accepted for value, exempted from levy, without recourse. UCC 1-201, UCC 1-308," rather than with his own signature; that his parole officers "did not have proxy" over him; or that he was transported to and from the jail and the courthouse at various times "under duress and without [his] consent." (*Id.* at 6, 15.)

These sovereign-citizen arguments — based on the notion that the consent of an individual person is required for a state to exercise criminal jurisdiction over that individual person and to employ the state's criminal procedures — have "'no conceivable validity in American law' and are patently frivolous." *United States v. Crawford*, No. 18-3149, 2022 WL 2712868, at *1 (3d Cir. July 13, 2022) (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)); *see also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("[Courts] have repeatedly rejected [sovereign citizens'] theories of individual sovereignty, immunity from prosecution, and their ilk. . . . Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-

party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts.  (citations omitted)); *United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (explaining that "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity); *United States v. Crawford*, No. 19-15776, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (holding that criminal defendant's attempt to use fake UCC financing statements against prosecutor was a legal nullity); *cf. West v. Atkins*, 487 U.S. 42, 56 n.15 (1988) ("[P]risons and jails are inherently coercive institutions that for security reasons must exercise nearly total control over their residents' lives and the activities within their confines.").

The Court will dismiss all claims in the SAC because they rest entirely on sovereign-citizen concepts.  *See Benabe*, 654 F.3d at 767 ("These [sovereign-citizen] theories should be rejected summarily, however they are presented."); *see also Ewans v. State of New Jersey*, No. 25-1368, 2025 WL 2630569, at *1 (3d Cir. Sept. 12, 2025) (affirming dismissal of sovereign-citizen complaint as frivolous under § 1915(e)(2)(B)(i)) (citing, *inter alia*, *United States v. Taylor*, 21 F.4th 94, 101 n.6 (3d Cir. 2021), and *Benabe*, 654 F.3d at 767).  Yarbough is not granted further leave to amend his SAC in this action, because the Court has provided him with multiple opportunities to consolidate his allegations into a single pleading, which he has now done so, leave to amend his sovereign-citizen-based claims would be futile, for the reasons discussed above.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

Despite every claim in the SAC hinging on the consent-based, sovereign-citizen arguments described above, Yarbough also cites to various constitutional and statutory rights of accused persons and criminal defendants.  His claims all seek monetary and/or injunctive relief based on alleged infirmities in his arrest, detention, and criminal prosecution, or otherwise seek relief that

7

would call into question the validity of his criminal conviction. (*See, e.g.*, SAC at 33 *et seq.* (seeking monetary and injunctive relief based on "claims of injuries" including false arrest, abuse of process, false imprisonment, among others).) To the extent that any claims could be construed as separate from Yarbough's sovereign-citizen arguments (with which, for the reasons discussed above, they appear inextricably intertwined), they would nonetheless be barred for two reasons. First, because Yarbough's criminal proceedings have not terminated in his favor, he cannot be awarded money damages on any claim or theory that would call into question the validity of his conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that where a claim for money damages "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is pursued, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" (footnote and citation omitted)).[6] Second, Yarbough cannot be granted injunctive relief that would free him from state custody in an action brought pursuant to § 1983, such as this one; that relief may only be granted by a federal court through a properly

---

[6] Although the SAC includes facts related to Yarbough's arrest and pretrial detention, the Court cannot discern any allegations of excessive force in the SAC and, therefore, does not understand Yarbough to lodge any such claim. Further, though the SAC purports to lodge claims for false arrest and false imprisonment, at no point does Yarbough appear to assert that his arrest was made without a warrant or probable cause. Yarbough offers only conclusory statements that the "Norristown Police Department planned an ambush to illegally search, seize, [and] arrest [him]"; that he was "stalked & ambushed & illegally detained"; and that the Norristown Police were "given full consent before, during, and after [the] ambush [and] illegal arrest to stalk, harass & torment [him]," by a judge "acting outside her normal judicial capacity to conduct business (illegal) . . . between Montgomery County Courthouse, Norristown Police Department, & 'Durrelle Yarbough,' without Petitioner's knowledge, consent, permission, contractual binding (express/implied), signature, agreement, surety & otherwise proxy over Petitioner." (SAC at 9-10, 21-22.) These conclusory allegations and sovereign-citizen arguments cannot support Yarbough's claims for false arrest and false imprisonment. Therefore, these claims are dismissed,

8

filed petition for *habeas corpus*.[7] *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that a claim under § 1983 may not proceed where the relief sought is release from custody).

## IV.   CONCLUSION

For the reasons set forth and pursuant to § 1915(e)(2)(B)(ii), the SAC is dismissed for failure to state claim and without leave to amend. Any claims based on sovereign-citizen arguments are dismissed with prejudice. To the extent that any claims remain, they are dismissed without prejudice to Yarbough's filing a new civil rights complaint **_only in the event_** that his conviction is reversed, vacated, or otherwise invalidated, *see Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (noting that *Heck*-barred claims must be dismissed without prejudice), or to his seeking habeas corpus re lief, *see Preiser*, 411 U.S. at 500.

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[7] To the extent that Yarbough "ask[s] for an order directing state judicial officers to take a specific action" unrelated to his release from custody (such as recusal or reassignment), "that relief is generally not one that a federal court has authority to issue, and certainly not one that is available under the circumstances of this case." *Martinez v. Creany*, No. 24-1411, 2024 WL 3200247, at *2 (3d Cir. June 27, 2024) (first citing *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963) (*per curiam*) (explaining that a district court lacked jurisdiction "to issue a writ of mandamus compelling action by a state official"), then citing *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (reasoning that federal courts "have no authority to issue a writ to direct state courts or their judicial officers in the performance of their duties" (cleaned up)).